**FIRSTAR METROPOLITAN BANK & TRUST f/k/a Metropolitan Bank, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

**No. CIV-95-1297-PHX-ROS.**

United States District Court, D. Arizona.

March 20, 1997.

Robert Clifford Hackett, Nathaniel Bishop Rose, Mohr Hackett Pederson Blakley, Phoenix, AZ, for Firstar Metropolitan Bank & Trust.

Antonio Dominguez, Dominguez & Associates PC, Phoenix, AZ, for F.D.I.C.

## ORDER

SILVER, District Judge.

### BACKGROUND

On May 3, 1995, Plaintiff Firstar Metropolitan Bank and Trust commenced this action in the Superior Court of the state of Arizona in and for Maricopa County alleging breach of contract and breach of the covenant of good faith and fair dealing. Plaintiff alleges that Defendant FDIC breached its obligations under a loan participation agree-

ment[1] entered into by Plaintiff and Century Bank by: (1) making changes in the loan that was the subject of the loan participation agreement;[2] (2) waiving and releasing loan covenants/requirements imposed upon M & D Electrical and M & D Electrical's guarantors;[3] (3) allowing M & D Electrical to use $300,000 in insurance proceeds for working capital instead of applying that amount to reduce the unpaid balance on the M & D loan; (4) entering into a settlement agreement with M & D Electrical on or about March 15, 1994 without Plaintiff's knowledge or consent;[4] (5) mismanaging/misadministering the M & D Electrical loan and the loan participation agreement; (6) deviating from application standards of care in commercial loan administration; and (7) deviating from applicable commercial banking industry policies, procedures, and standards. Most significantly, Plaintiff alleges that Defendant's waiver and release of the loan covenants/requirements, mismanagement of the adminis-

tration of the M & D Electrical loan, and deviation from applicable commercial banking industry standards constitute gross negligence and willful misconduct. (Compl.¶ 7.)

On June 27, 1995, Defendant removed this action to this Court pursuant to this Court's original jurisdiction. 12 U.S.C. § 1819. On May 15, 1996, Defendant moved for summary judgment. On February 18, 1997, this Court heard oral argument on that motion.

## DISCUSSION

### I. Breach of Contract Claim

#### A. Chemical Bank v. Security Pacific Nat'l Bank

Defendant contends that Plaintiff can sue Defendant only for gross negligence and willful misconduct pursuant to the explicit terms of the loan participation agreement and that summary judgment should be granted to Defendant because Plaintiff has failed to do so.[5]

1. Plaintiff alleges that on or about June 2, 1989, Plaintiff entered into a loan participation agreement with Century Bank and invested $300,000 for a 20% interest in a $1,500,000 loan from Century Bank to M & D Electrical Parts Remanufacturing, Inc. ("M & D Electrical"). (Compl.¶ 5.) In October 1989, Defendant FDIC became Century Bank's receiver after Century Bank became insolvent. (Compl.¶ 6.) On March 31, 1994, Defendant sold its interest in the M & D Electrical loan to General Financial Services, Inc. (Compl.¶ 11.)

2. Plaintiff alleges that Defendant made the following changes without the knowledge or consent of Plaintiff: (1) eliminating the bank control/cash collateral account; (2) advancing loan funds when M & D Electrical was in breach of its obligations pursuant to the M & D Electrical loan; (3) advancing loan funds to M & D Electrical in excess of amounts permitted pursuant to M & D Electrical loan documentation; (4) misapplying cash and other assets of M & D Electrical and M & D Electrical's guarantors; (5) changing the interest accrual factor from 360 days to 365 days; (6) changing the interest rate from "Century prime plus 2%" to "West Coast prime plus 2%"; (7) discontinuing transmittal of payment and delinquency notices to M & D Electrical; (8) commencing a 1/2% service fee; (9) deviating and failing to perform in the administration of the M & D Electrical loan; and (10) deviating and failing to perform in the pursuit of claims against M & D Electrical, M & D Electrical's guarantors, and the collateral in a prudent and businesslike manner and in accordance with ap-

plicable commercial banking industry policies, procedures, and standards. (Compl.¶ 7.)

3. Plaintiff alleges that the loan covenants/requirements contained in the M & D Electrical loan documentation relate to: (1) loan base; (2) loan base reporting; (3) bank control account; (4) key man life insurance; (5) collateral examination; and (6) financial covenant requirements. (Compl.¶ 7.)

4. Plaintiff alleges that pursuant to the settlement agreement between Defendant and M & D Electrical, Defendant agreed to accept $580,000 at an interest rate of 8% per annum in exchange for a release of all obligations under the M & D Electrical loan, which included the extinguishment of all obligations of M & D Electrical and M & D Electrical's loan guarantors under the M & D Electrical loan and release of the collateral. (Compl.¶ 10.)

5. Paragraph 6(A) of the loan participation agreement states in relevant part:

   **A. *Disclaimer by Bank.*** Bank has not made any representations or warranties, express or implied, with respect to, and Bank does not assume and has no responsibility or liability for, the collectability, enforceability or validity of, the Loan Documents, the Collateral, or the financial condition of Borrower or any obligor or guarantor of the Loan or of the Collateral. Neither Bank nor any of its directors, officers, employees, agents, or attorneys shall be liable on account of any action taken or omitted hereunder by Bank, except for Bank's *gross negligence* or *willful misconduct.*

   (Def.'s Mot. Summ. J. at 5) (emphasis added).

(Def.'s Mot. Summ. J. at 8.) In support, Defendant relies upon *Chemical Bank v. Security Pacific Nat'l Bank*, 20 F.3d 375 (9th Cir.1994). In that case, the Ninth Circuit held that although it was beyond question that a bank, acting as an agent for two other banks, had breached its contract with the other banks by failing to carry out its fiduciary duty as agent, the credit agreement entered into by the banks effectively eliminated much of the agent bank's liability under that agreement. *Id.* at 377–78. The Ninth Circuit found that the credit agreement at issue specifically limited the agent bank's potential liability to "its own gross negligence or willful misconduct." *Id.* at 378. The panel explained its rationale for permitting the agent bank to be sued only for gross negligence or willful misconduct even though the agent bank had clearly breached its contract and fiduciary duty as follows:

> [T]here is no law against parties to a contract relieving themselves of liability by contract, particularly when they are sophisticated institutions represented by knowledgeable counsel. The credit agreement that all three banks signed went a long ways toward relieving [the agent bank] of what it might otherwise have been expected to do.

*Chemical Bank*, 20 F.3d at 377–78. Ultimately, the Ninth Circuit reversed the district court's summary judgment rulings because the panel determined that the district court could not have determined as a matter of law that the agent bank acted with gross negligence or willful misconduct. *Id.* at 378.

Similarly, in the instant case, the loan participation agreement between Plaintiff and Century/Defendant explicitly limited Century/Defendant's liability under that agreement to Century/Defendant's "gross negligence or willful misconduct." (Paragraph 6(A) of Loan Participation Agreement.) Applying the Ninth Circuit's reasoning in *Chemical Bank* to the instant case, Century and Defendant appear to have contractually relieved themselves of liability under the contract except for acts or omissions rising to the level of gross negligence or willful misconduct.

Although Defendant contends that dismissal is appropriate because Plaintiff has not sued Defendant for gross negligence or willful misconduct, (Def.'s Mot. Summ. J. at 8), Defendant ignores Plaintiff's allegations that Defendant's performance of its obligations relating to the waiver and release of loan covenants/requirements, mismanagement of the administration of the M & D Electrical loan, and deviation from commercial banking industry standards constitutes gross negligence or willful misconduct. (Compl.¶ 7.) Plaintiff has incorporated the above-listed allegations in both causes of action asserted in the existing Complaint. Thus, this Court will construe claims within Plaintiff's existing Complaint charging gross negligence in breach of Defendant's contractual obligations and gross negligence in breach of Defendant's implied covenant of good faith and fair dealing.

■ This Court also disagrees with Defendant's proposition that Plaintiff can only maintain tort claims against Defendant for gross negligence or willful misconduct. In *Chemical Bank*, the Ninth Circuit noted that the plaintiffs in that case had set forth a "cause of action charging gross negligence in breach of [the defendant's] contractual obligations." *Chemical Bank*, 20 F.3d at 376. Elsewhere, the panel noted that the plaintiffs were bringing an additional "cause of action alleging gross negligence in breach of [the defendant's] fiduciary duty." *Chemical Bank*, 20 F.3d at 377. This Court construes *Chemical Bank* as allowing a litigant faced with a limitation of liability provision identical to the provision set forth in that case to maintain an action against a party accused of breaching a contract and a duty contracted for within the contract as long as the causes of action asserted allege contractual breaches to have occurred in a gross negligent or willful manner. Thus, to the extent that Defendant argues that Plaintiff cannot allege any causes of action that are contractual in nature, this Court disagrees. Plaintiff can still maintain contractual causes of action as long as they meet the heightened standard of gross negligence or willfulness.

## B. Contract/Tort Distinction

■ Plaintiff responds by attempting to avoid application of the rule in *Chemical*

*Bank* based upon a contract/tort distinction. Plaintiff contends that the cases cited by Defendant are distinguishable because they involved the "limitation of a party's tort liability, not liability for breach of contract." (Pl.'s Opp'n Mem. at 4 n. 1.) Plaintiff's proposition is simply wrong. There is little doubt that the Ninth Circuit in *Chemical Bank* was addressing the agent bank's liability for breach of contract when it referred to the fact that the credit agreement relieved the agent bank of any liability except for its "own gross negligence or willful misconduct." *Chemical Bank,* 20 F.3d at 378. Indeed, the only way to reconcile the panel's explicit finding that the agent bank breached its contract with the Court's conclusion that the agent bank could only be liable for its "own gross negligence or willful misconduct" and with the decision to allow the case to proceed to jury trial is to conclude that ordinary breach of contract claims were held insufficient to hold the agent bank liable. Thus, contrary to Plaintiff's position, *Chemical Bank* is highly relevant to the question of whether a party can specifically limit its liability under a contract to its "own gross negligence or willful misconduct."

### C.  Lack of Mutuality of Obligation

▋ Plaintiff also relies upon *Commercial Movie Rental, Inc. v. Larry Eagle, Inc.,* 738 F.Supp. 227 (W.D.Mich.1989), for the proposition that Defendant's interpretation of the loan participation agreement (i.e., allowing Defendant not to be bound to perform its obligations) would render that contract invalid for lack of mutuality of obligation. That case, however, is clearly distinguishable. In *Commercial Movie,* the district court there found the contract being sued upon void for lack of consideration and lack of mutuality of obligation because one of the parties had unambiguously exempted itself from all liability for a breach of its obligations. In contrast, in the instant case, Defendant has not exempted itself from all potential liability for breach of the loan participation agreement. The contract permits Plaintiff to sue Defendant for conduct that rises to the level of "gross negligence" or "willful misconduct." Defendant contends that it remained liable to Plaintiff for its performance under the loan participation agreement despite the contractual limitation of liability found in paragraph 6(A) of the agreement. (Def.'s Reply Mem. at 8.) Plaintiff has not cited any case that indicates that a contract containing a partial exemption from liability must be viewed as void for lack of mutuality of obligation. Because the loan participation agreement does not exempt Defendant from all liability for a breach, Plaintiff has not demonstrated that the contract at issue would fail for lack of mutuality of obligation under Defendant's construction of the terms of the agreement.

### D.  Parol Evidence

▋ Plaintiff also contends that it did not intend for paragraph 6(A) of the loan participation agreement to prohibit it from suing for ordinary breach of contract. (Pl.'s Opp'n Mem. at 4.) In support, Plaintiff relies upon affidavits of two of its officers as parol evidence of the meaning of the contract intended by the parties. (Pl.'s Opp'n Mem. Exs. A, B.) Such affidavits indicate that: (1) Plaintiff did not intend for the participation agreement to prohibit Plaintiff from bringing a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing; (2) Plaintiff operated on the belief that it could bring a cause of action for breach of contract and breach of the covenant of good faith and fair dealing throughout the course of the participation agreement; (3) Plaintiff would not have entered into the participation agreement if it thought that the agreement prohibited Plaintiff from bringing a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing; and (4) Plaintiff intended for the participation agreement to only limit Century/FDIC's tort liability. (Paul F. Muscenti Aff. dated June 13, 1996 ¶¶ 3–6; Max H. Decker Aff. dated June 13, 1996 ¶¶ 2–5.)

As Defendant correctly points out, however, the rule in Arizona regarding the admission of parol evidence is that "the judge first considers the offered evidence and, if he or she finds that the contract language is reasonably susceptible' to the interpretation asserted by its proponent, the evidence is admissible to determine the meaning intended

by the parties." *Taylor v. State Farm Mutual Auto. Ins. Co.*, 175 Ariz. 148, 854 P.2d 1134, 1140 (1993). Defendant contends that the language in paragraph 6(A) of the loan participation agreement is not reasonably susceptible to different interpretations. (Def.'s Reply Mem. at 7.) This Court agrees. Paragraph 6(A) unambiguously states, "Neither Bank nor any of its directors, officers, employees, agents, or attorneys shall be liable on account of any action taken or omitted hereunder by Bank, except for Bank's gross negligence or willful misconduct." (Paragraph 6(A) of Loan Participation Agreement.) There is no indication that paragraph 6(A) was designed to limit only Century/Defendant's tort liability. Thus, the Court finds the proffered affidavits not admissible to determine the meaning intended by the parties.

## II. Breach of the Covenant of Good Faith and Fair Dealing

■ Defendant contends that Plaintiff's claim based upon the implied covenant of good faith and fair dealing should be dismissed because: (1) Plaintiff can only maintain causes of action based upon gross negligence or willful misconduct, and (2) Plaintiff cannot demonstrate a fiduciary or "special relationship" between itself and Defendant. In support, Defendant impliedly relies upon *Simmons v. Mobil Oil Corp.*, 29 F.3d 505 (9th Cir.1994), for the proposition that a tortious claim asserting the breach of the covenant of good faith is required to show the existence of a fiduciary or other special relationship. *Id.* at 512. Arizona courts recognize that tort damages for breach of implied covenant of good faith is available in certain circumstances in which there is a "special relationship between the parties arising from elements of public interest, adhesion, and fiduciary responsibility." *Burkons v. Ticor Title Ins. Co. of Cal.*, 168 Ariz. 345, 813 P.2d

710, 720 (1991). Defendant argues that Plaintiff's claim must fail because Plaintiff cannot demonstrate the existence of a fiduciary or other special relationship between itself and Defendant.[6]

In response, Plaintiff contends that Defendant has erroneously construed its claim as asserting a *tortious* breach of the covenant of good faith and fair dealing when, in fact, Plaintiff has actually asserted a claim based upon the breach of the *contractual* covenant of good faith.[7] (Pl.'s Opp'n Mem. at 6–7.) This distinction is relevant because Plaintiff alleges that a special relationship is not a required element of a claim based on the contractual covenant of good faith, which is imposed in every Arizona contract. *Simmons,* 29 F.3d at 513.

As mentioned earlier, this Court has determined that Plaintiff can assert claims alleging breach of contract and breach of the contractual covenant of good faith and fair dealing as long as they assert gross negligence or willful misconduct. Plaintiff's claim based on the covenant of good faith and fair dealing is clearly an action on the contract. Plaintiff's Complaint is devoid of any indication that Plaintiff is seeking tort damages for breach of the implied covenant of good faith and fair dealing. Thus, in light of the distinction between tortious and contractual claims based on the breach of the implied covenant of good faith and fair dealing, Plaintiff's assumption that it need not demonstrate a special relationship is correct. Thus, Plaintiff's claim based on the breach of the implied covenant of good faith and fair dealing will not be dismissed.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 20) is granted in part and denied in part. Plaintiff

---

6. Defendant explicitly relies upon *First Citizens Fed. Sav. & Loan Ass'n v. Worthen Bank and Trust Co.*, 919 F.2d 510 (9th Cir.1990), for the proposition that "fiduciary relationships should not be inferred absent unequivocal contractual language." *Id.* at 514. Defendant also notes that "a special relationship may be deemed to exist where a contract exists for other than commercial reasons or where contract damages are likely to be inadequate." *Simmons,* 29 F.3d at 512. Defendant rejects the existence of either a

fiduciary relationship or any other special relationship between itself and Plaintiff. (Def.'s Mot. Summ. J. at 9.)

7. The contractual covenant of good faith "forbids a party to a contract from doing anything denying the right of the other to receive the benefits that flow from the contract." *Burkons,* 813 P.2d at 720.

is limited to asserting causes of action charging gross negligence in breach of Defendant's contractual obligations and contractual covenant of good faith and fair dealing.